Titus HENDERSON, Plaintiff,

v.

Gerald BERGE and Matthew Frank, Defendants.

No. 04–C–39–C.

United States District Court, W.D. Wisconsin.

March 31, 2005.

Titus Henderson, pro se.

Charles D. Hoornstra, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff Titus Henderson brought this civil action for monetary relief pursuant to 42 U.S.C. § 1983. In his complaint, he contended that certain prison employees had violated his First Amendment rights to exercise his religion freely and his rights under the Religious Land Use and Institutionalized Persons Act by denying him copies of two Taoist texts and forcing him to submit to Christianity as part of a behavior modification program. He contended also that defendants Matthew Frank and Gerald Berge had violated his rights under the establishment clause of the First Amendment by broadcasting a 24–hour Christian television station on one of the prison's television stations. I dismissed plaintiff's free exercise and Religious Land Use and Institutionalized Persons Act claims because he had not exhausted his administrative remedies before bringing the claims.

The case is before the court on defendants' motion for summary judgment on plaintiff's one remaining claim involving the establishment clause. In his complaint, plaintiff alleged that he was coerced into watching the Judeo–Christian Sky Angel–Trinity television channel, that defendants use taxpayer funds to purchase the Sky Angel channel, that he must complete a Judeo–Christian behavior modification program as a condition of transfer to a less secure prison and that defendants' actions send a clear message to inmates that the Judeo–Christian faith is preferred within the prison system. Now that the parties have had an opportunity to brief the motion and to propose facts supporting their positions, it is clear that plaintiff has no evidence to support the allegations of his complaint and that defendants are entitled to judgment in their favor.

For the purpose of deciding this motion, I find from the facts proposed by the parties that the following are material and undisputed.

## UNDISPUTED FACTS

Plaintiff is an inmate at the Wisconsin Secure Program Facility. Defendant Matthew Frank is Secretary of the Wisconsin Department of Corrections and defendant Gerald Berge is Warden of the Wisconsin Secure Program Facility.

On January 10, 2003, plaintiff was transferred to the Wisconsin Secure Program Facility, where he began working his way

through the facility's Level Program, which allows for gradual increases in inmate privileges if inmates demonstrate appropriate behavior. Plaintiff has been promoted to Level 3 several times, but has been demoted each time for bad behavior. He has never been promoted to Levels 4 or 5.

The Wisconsin Secure Program Facility takes an active role in providing access to religious services and property to those inmates who choose to practice a legitimate religion of their choice but it does not advocate any one religion. It allows all inmates to participate in lawful religious practices consistent with orderly confinement, the security of the institution and fiscal limitations. It does not require any inmate to participate in religious activities or practices; progression through the Level Program is not dependent upon practicing Christianity or any other religion.

Inmates on program levels 2 through 5 can watch television in their cells. Program level 1 inmates not on the Alpha Unit are allowed access to television programming on Mondays from 9:00 a.m. to 11:00 a.m. The programming is provided by Locktight Security and Satellite, which transmits commercial network packages available from Dish Network. The programming consists of 5 video channels and 2 audio music channels selected by the institution from a list of 30 possibilities, including local, news, educational, entertainment, public interest, religious and music channels. Before March 1, 2004, the facility-selected programming consisted of PBS, MSNBC, The Discovery Channel, The History Channel, Eternal Word Television Network (Sky Angel or Trinity Broadcasting Network), and two audio channels. The religious channel was free with the purchase of the basic channels. It is a 24–hour, Christian-oriented programming channel that runs Sky Angel and Trinity Broadcast Network and is the only religious channel made available to Locktight from Dish Network. As of March 1, 2004, after defendants entered into a new contract with Locktight, the institution no longer broadcasts any religious-oriented satellite television channel.

The Wisconsin Secure Program Facility broadcasts closed-circuit television channels to inmates in program levels 2 through 5. Two of the six closed-circuit channels run programming on a variety of religions, including non-Christian religions. One particular program run over closed-circuit television is Mrs. B.D. Hyman's Christian Way program.

Inmates have no say in the facility's choice of the channels offered by Locktight or the programs to be shown over the closed-circuit television network, but they may turn their television sets off or change channels at any time. Inmates are not forced to view any religious programming. Short of cutting off the power supply to a television, guards have no central mechanism that allows them to control an inmate's television.

## OPINION

### *First Amendment*

█ It is evident that plaintiff has no valid claim under the First Amendment's establishment clause, which prevents the government from promoting any religious doctrine or organization or affiliating itself with one. *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 590, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). The clause is violated when "the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *Id.* at 592, 109 S.Ct. 3086 (citations omitted); it is not violated when a governmental entity provides opportunities for institutionalized inmates to practice

their religion, provided that the entity does so in an even-handed way.

Plaintiff argues that defendants crossed the fine line between their duty not to promote religion and their obligation not to interfere with inmates' free exercise of religion when they allowed the broadcast of a free religious channel, but he cannot prevail on his claim. The undisputed facts show that the institution offered a variety of religious programs on its closed circuit programming, so that inmates had a choice among such programs, as well as the choice of not watching any religious program.

■ Under the three-part test laid out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), a government act does not violate the establishment clause if it has a secular purpose; if its principal or primary effect is one that neither advances nor inhibits religion; and if it does not foster "an excessive governmental entanglement with religion." *Id.* at 612–13, 91 S.Ct. 2105 (citations omitted); *Freedom from Religion Foundation v. Bugher,* 249 F.3d 606, 610 (7th Cir.2001).

■ Defendants say that the purpose of their religious broadcasting is "to accommodate and protect its inmates' free exercise of religion while operating within the economic and security constraints endemic to a high security prison." Dft.'s Brief in Supp., dkt. # 34, at 5. Although it may seem anomalous to say that accommodating religion is a secular purpose, the Supreme Court held in *Corporation of the Presiding Bishop v. Amos* 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), that "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." As the Court of Appeals for the Fourth Circuit explained in *Madison v. Riter,* 355 F.3d 310, 317 (4th Cir. 2003), "in commanding neutrality, the Es-

tablishment Clause does not require the government to be oblivious to the burdens that state action may impose upon religious practice and belief. Rather, there is 'ample room under the Establishment Clause for " 'benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.' " (quoting *Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 705, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (quoting *Amos,* 483 U.S. at 334, 107 S.Ct. 2862))." To the extent that the prison's television programming merely facilitates opportunities for inmates to engage in the free exercise of religion, it has a secular purpose.

■ Providing only one satellite channel with religious programming did not have the effect of advancing one religion over another under *Lemon's* second test. A prison is not permitted to favor a particular religious belief but it need not provide identical facilities or personnel for every religious group within a prison. *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Young v. Lane,* 922 F.2d 370, 377–378 (7th Cir.1991); *Al–Alamin v. Gramley,* 926 F.2d 680, 687 (7th Cir.1991). Defendants are not required to broadcast exactly the same number of hours of programming for each religion practiced by its inmates. In light of the financial constraints of the facility, the number of channels devoted to non-Christian and non-religious programming and each inmate's ability to change channels and turn off his television, one cannot infer any institutional preference from the number of hours of Christian television programming.

■ "For a law to have forbidden 'effects' under *Lemon,* it must be fair to say that the government itself has advanced

religion through its own activities and influence." *Charles v. Verhagen,* 348 F.3d 601, 610 (7th Cir.2003) (citing *Amos,* 483 U.S. at 334, 107 S.Ct. 2862). In deciding whether the government has advanced any religion, courts must take into consideration the reality of prisoners' restricted access to religious services and their reliance on the institution to take an active role in supplying those services. *Johnson–Bey v. Lane,* 863 F.2d 1308, 1312 (7th Cir.1988). "That role is not an interference with, but a precondition of, the free (or relatively free) exercise of religion by [prisoners]." *Id.* "The religious establishments that result are minor and seem consistent with, and indeed required by, the overall purpose of the First Amendment's religion clauses, which is to promote religious liberty." *Id.*

Finally, providing religious programming over the facility's television is not the "kind" of entanglement forbidden under the third test of *Lemon,* but rather a means by which defendants can carry out their responsibilities under the free exercise clause of the First Amendment. *Lynch v. Donnelly,* 465 U.S. 668, 673, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) ("Nor does the Constitution require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility towards any."). Persons confined to a secure facility must depend on the government for access to their religion. Without any evidence that defendants censor, monitor or alter the programming on the Christian station or require inmates to watch it, plaintiff cannot show that defendants violated the establishment clause while trying to give content to the free exercise rights of inmates. I conclude, therefore, that defendants are entitled to summary judgment.

Another issue remains. Plaintiff's prosecution of this case raises serious concerns about his reasons for suing. In his complaint, plaintiff implied that he had been forced to participate in a Christian study group as a condition of eligibility for transfer to a less secure institution. In his response to defendants' proposed findings of fact, he asserted that defendants implemented Christian programming "in the Level 5 Behavioral Modification Program to change and teach prisoners moral thoughts with the Christian Study group" and denied prisoners parole if they did not complete the "program of Christianity." Plt.'s Resp. to Dfts.' PFOF, dkt. # 42, at 5–6, ¶ 34. In an order entered February 6, 2005, I asked plaintiff to clarify whether he was denied parole because he refused to watch Christian television programming and instructed him to cite evidence supporting the truth of his statements instead of relying on bald assertions or conclusory averments in an affidavit. Feb. 5, 2005 Order, dkt. # 53. Instead of responding as instructed, plaintiff simply restated his conclusion that he was denied parole because of his "refusal to complete the Level 5 Behavior Program with the Christian program," and cited evidence that contradicted his assertion.2d Aff. of Titus Henderson, dkt. # 55, at 2, ¶ 7. For instance, he cited a December 19, 2003 *Parole Commission Action* recognizing that he had "successfully completed all recommended programming, and more" at the time of his parole review but denying plaintiff's early release because of his unsatisfactory conduct, including "a serious battery to an inmate involving the use of a weapon" just over one year before the parole hearing. *Id.* It is evident from his inability to adduce evidence in support of his allegations and the undisputed fact that he has never reached level 4, let alone 5, that plaintiff was not candid or truthful

when he drafted his submissions to the court.

This is not the only case that plaintiff has filed in this court. His actions and averments in this case have shown him to be unreliable and less than forthright. This showing will not help him in future cases that he prosecutes. Moreover, if he continues to act in the same manner, he is running the risk that defendants will move for sanctions for his misuse of the judicial system or the court will impose them on its own motion.

### ORDER

IT IS ORDERED that defendants Gerald Berge's and Matthew Frank's motion for summary judgment on plaintiff Titus Henderson's claim under the First Amendment's establishment clause is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.